IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF FLORIDA
GAINESVILLE DIVISION

KEITH PATRICK MOCK,

       Plaintiff,

vs.                             CASE NO. 1:17-cv-190-MW-GRJ

NANCY A. BERRYHILL,
Acting Commissioner of
Social Security,

       Defendant.

_____/

## REPORT AND RECOMMENDATION

Plaintiff appeals to this Court from a final decision of the Acting Commissioner of Social Security (the "Commissioner") denying Plaintiff's application for period of disability and disability insurance benefits under Title II of the Social Security Act ("the Act") and supplemental security income under Title XVI of the Act. (ECF No. 1.) The Commissioner has answered (ECF No. 13), and both parties have filed briefs outlining their respective positions. (ECF Nos. 18, 19.) For the reasons discussed below, it is recommended that the Commissioner's decision be affirmed.

## I. PROCEDURAL HISTORY

Plaintiff protectively filed his Title II and Title XVI applications,

alleging a disability onset date of July 26, 2007. (R. 58–59, 219–41.) His application was denied initially and upon reconsideration. (R. 149–76.) Following a hearing on April 15, 2015, an administrative law judge ("ALJ") issued a decision unfavorable to Plaintiff. (R. 38–49.) The Appeals Council denied Plaintiff's request for review. (R. 1–4.) On July 20, 2017, Plaintiff filed the instant appeal. (ECF No. 1.)

## II.  STANDARD OF REVIEW

The Commissioner's findings of fact are conclusive if supported by substantial evidence. *See* 42 U.S.C. § 405(g) (2000). Substantial evidence is more than a scintilla, i.e., the evidence must do more than merely create a suspicion of the existence of a fact, and must include such relevant evidence as a reasonable person would accept as adequate to support the conclusion. *Foote v. Chater*, 67 F.3d 1553, 1560 (11th Cir. 1995) (citing *Walden v. Schweiker*, 672 F.2d 835, 838 (11th Cir. 1982), *Richardson v. Perales*, 402 U.S. 389, 401, 91 S. Ct. 1420, 28 L. Ed. 2d 842 (1971)); *accord Edwards v. Sullivan*, 937 F.2d 580, 584 n.3 (11th Cir. 1991).

Where the Commissioner's decision is supported by substantial evidence, the district court will affirm, even if the reviewer would have reached a contrary result as finder of fact, and even if the reviewer finds

that the evidence preponderates against the Commissioner's decision. *Edwards*, 937 F.2d at 584 n.3; *Barnes v. Sullivan*, 932 F.2d 1356, 1358 (11th Cir. 1991). The district court must view the evidence as a whole, taking into account evidence favorable as well as unfavorable to the decision. *Foote*, 67 F.3d at 1560. However, the district court will reverse the Commissioner's decision on plenary review if the decision applies incorrect law, or if the decision fails to provide the district court with sufficient reasoning to determine that the Commissioner properly applied the law. *Keeton v. Dep't Health & Human Servs.*, 21 F.3d 1064, 1066 (11th Cir. 1994).

The law defines disability as the inability to do any substantial gainful activity by reason of any medically determinable physical or mental impairment that can be expected to result in death, or has lasted or can be expected to last for a continuous period of not less than twelve months. 42 U.S.C. §§ 416(I), 423(d)(1); 20 C.F.R. § 404.1505 (2005).[1] The impairment must be severe, making Plaintiff unable to do his previous work, or any other substantial gainful activity which exists in the national economy. 42

---

[1] All further references to 20 C.F.R. will be to the 2005 version, unless otherwise specified.

U.S.C. § 423(d)(2); 20 C.F.R. §§ 404.1505–404.1511.

The ALJ must follow five steps in evaluating a claim of disability. 20 C.F.R. §§ 404.1520, 416.920. The claimant has the burden of proving the existence of a disability as defined by the Social Security Act. *Carnes v. Sullivan*, 936 F.2d 1215, 1218 (11th Cir. 1991). First, if a claimant is working at a substantial gainful activity, he is not disabled. 20 C.F.R. § 404.1520(b). Second, if a claimant does not have any impairment or combination of impairments which significantly limit his physical or mental ability to do basic work activities, then he does not have a severe impairment and is not disabled. 20 C.F.R. § 404.1520(c). Third, if a claimant's impairments meet or equal an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1, he is disabled. 20 C.F.R. § 404.1520(d). Fourth, if a claimant's impairments do not prevent him from doing past relevant work, he is not disabled. 20 C.F.R. § 404.1520(e). Fifth, if a claimant's impairments (considering his residual functional capacity ("RFC"), age, education, and past work) prevent him from doing other work that exists in the national economy, then he is disabled. 20 C.F.R. § 404.1520(f).

# III.  SUMMARY OF THE RECORD

Plaintiff's medical records cover the time period from 2008 to 2015 and are from the Florida Department of Corrections, Palms Medical Group, University Opticians, Meridian Behavioral Healthcare, Shands at the University of Florida, University of Florida Physicians, UF Community Health and Family Medicine, and the Alachua County Health Department. Because Plaintiff's only argument on appeal relates to his mental health impairments, the relevant portions of the medical record, opinion evidence, hearing testimony, and the ALJ's findings are summarized below.

## A.  Medical Evidence

With regard to Plaintiff's mental health, Plaintiff's records from the Florida Department of Corrections disclose that Plaintiff underwent an initial psychological screening in 2008. His mental status examination revealed normal findings, except that Plaintiff appeared sad and experienced persistent tension or stress. Plaintiff reported having a depressed mood, changes in energy, poor concentration, racing thoughts, and symptoms of panic attacks and mania, including mood swings. It was noted that Plaintiff's immediate and remote memory were intact and that his judgment and insight were adequate. Further, his records show that he

experienced mood swings in 2009 and that he was on psychotropic medication throughout the time period from 2009 to 2012. (R. 383–419.)

Plaintiff also visited Meridian Behavioral Helathcare regarding his mental health issues. In 2012 and 2013 the objective findings were normal and appropriate or unremarkable. His diagnoses included bipolar disorder, alcohol dependence, depression, and PTSD. (R. 430–37, 448–56.)

During Plaintiff's other medical visits unrelated to mental health, it was noted that Plaintiff had a history of bipolar disorder, anxiety, and PTSD. Additionally, all of his psychiatric and neurological examination findings as part of his physical exams were normal, including findings that he had a normal mood and affect as well as no signs of depression or anxiety. (R. 421–24, 458–533.)

## B.  Opinion Evidence

### 1. Judith LaMarche, Ph.D.

Dr. LaMarche, state agency examiner at the initial level, determined that Plaintiff had affective disorders, anxiety-related disorders, and substance addiction disorders. Further, the doctor found that Plaintiff had mild restrictions of activities of daily living and moderate difficulties in maintaining social functioning and maintaining concentration, persistence,

or pace. (R. 106–07.)

   She also completed a mental residual functional capacity assessment on Plaintiff. Dr. LaMarche, however, noted that Plaintiff had only the following limitations: moderate limitations in the ability to maintain attention and concentration for extended periods; moderate limitations in the ability to complete a normal workday and workweek without interruptions from psychologically based symptoms and to perform at a consistent pace without an unreasonable number and length of rest periods; moderate limitations in the ability to get along with coworkers or peers without distracting them or exhibiting behavioral extremes; moderate limitations in the ability to maintain socially appropriate behavior and to adhere to basic standards of neatness and cleanliness; and moderate limitations in the ability to set realistic goals or make plans independently of others. (R. 109–11.)

   **2. Damarys Sanchez, Psy.D.**

   Dr. Sanchez, a state agency consultant at the reconsideration level, determined that Plaintiff had affective disorders, anxiety-related disorders, personality disorders, and substance abuse disorders. Further, Dr. Sanchez found that Plaintiff had mild restriction of activities of daily living

and moderate difficulties in maintaining social functioning and in maintaining concentration, persistence, or pace. (R. 132–34.)

Dr. Sanchez also completed a mental residual functional capacity assessment. These findings were the same as those of Dr. LaMarche except that Dr. Sanchez did not find that Plaintiff had moderate limitations in the ability to set realistic goals or make plans independently of others. (R. 137–39.)

### 3. Lance Chodosh, M.D.

Dr. Chodosh performed a consultative examination of Plaintiff in March 2013. With regard to his mental health, Plaintiff reported that his medications were somewhat effective in helping to alleviate his mood swings and irritability. Dr. Chodosh noted that a review of the psychiatric records and/or separate psychological assessment is indicated. (R. 439–46.)

## C.  Hearing Testimony

At the hearing held on April 15, 2015, Plaintiff testified that he was disabled starting in 2007 due to bipolar disorder, post-traumatic stress disorder, asthma, and a back injury. Specifically with regard to his mental health, Plaintiff said he has issues with his mind racing, irritability, mood

swings, distractions, and low energy. With regard to his PTSD, Plaintiff

said he relives an incident in the past where he accidentally shot his sister

and his time in psychiatric facilities where he saw "a lot of weird stuff."

Plaintiff also said that he has nightmares from these incidents and that they

prevent him from concentrating and thinking rationally. As a result of his

mental issues, Plaintiff testified that he could not focus on the tasks at

work, either as a result of the issues themselves or from side effects due to

his medication. (R. 55–67.)

Plaintiff also testified that he has received both counseling and

medication for his mental health issues. Specifically, he was taking

medication for bipolar disorder, anxiety, and depression. With regard to his

bipolar disorder, Plaintiff said that his medication mellows out his moods.

Overall, he said his medications work but that his symptoms come back.

(R. 68–80.)

## D.  The ALJ's Findings

The ALJ found that Plaintiff met the insured status requirements of

the Act through June 30, 2009, and has not engaged in substantial gainful

activity since July 26, 2007, the alleged onset date. Further, the ALJ found

that Plaintiff's vision problems and history of a seizure disorder were not

severe but that Plaintiff has the following severe impairments: degenerative

disc disease of the lumbar spine, asthma, history of seizures,

hypertension, depression, anxiety, and post-traumatic stress disorder.

However, none of these impairments, or a combination thereof, meets or

medically equals the severity of one of the listed impairments. (R. 40–41.)

Based on a review of the entire record, the ALJ concluded that

Plaintiff has the residual functional capacity ("RFC") to perform a full range

of light work but with limitations. These limitations include avoiding

exposure to concentrated fumes, gases, poorly ventilated areas, and/or

hazards. Additionally, Plaintiff can only occasionally stoop, crouch, crawl,

kneel, and balance. Lastly, to account for Plaintiff's psychological issues

the ALJ limited Plaintiff to simple, routine tasks with no exposure to the

public and no more than occasional collaboration with co-workers and

supervisors in a position where there is no need for binocular vision. (R.

43.)

The ALJ then found that Plaintiff was unable to perform past relevant

work. However, considering Plaintiff's age, education, work experience,

and RFC, the ALJ found that there are jobs that exist in significant

numbers in the national economy that Plaintiff can perform. Ultimately, the

ALJ concluded that Plaintiff has not been under a disability, as defined in

the Act, from July 26, 2007, through the date of the decision, August 7,

2015. (R. 47–49.)

## IV.  DISCUSSION

Plaintiff argues that the ALJ failed to fully and fairly develop the

record, specifically regarding his mental health impairments and any

resulting functional limitations. Plaintiff specifically suggests that the ALJ

had a duty to order a consultative examination for Plaintiff.  Ultimately,

Plaintiff argues the following:

> In this matter, there is no question that Plaintiff Mock is
> mentally ill. However, because the mental health records are
> scanty and because the scanty records regarding Plaintiff
> Mock's mental illness fail to establish to what degree his mental
> illness would affect his ability to maintain employment; the
> record as a whole is inadequate and incomplete and reveals
> evidentiary gaps which result in unfairness and clear prejudice
> which rises to the level of a violation of due process.

(ECF No. 18 at 24–25.)

In developing the record, the ALJ must order a consultative

examination or obtain medical evidence or expert testimony where the

record contains insufficient evidence for the ALJ to make an informed

decision. *See Wilson v. Apfel*, 179 F.3d 1276, 1278 (11th Cir. 1999). An

ALJ, however, is not required to order medical evidence to have a complete record unless the record establishes that it is necessary to enable the ALJ to render his decision. *Holladay v. Bowen*, 848 F.2d 1206 (11th Cir. 1988); *Kelly v. Heckler*, 761 F.2d 1540, 1540 (11th Cir. 1985).

Further, "there must be a showing of prejudice before it is found that the claimant's right to due process has been violated to such a degree that the case must be remanded to the [Commissioner] for further development of the record." *Graham v. Apfel*, 129 F.3d 1420, 1423 (11th Cir. 1997) (citing *Brown v. Shalala*, 44 F.3d 931, 934–25 (11th Cir. 1995)). Prejudice has been found when the record "has evidentiary gaps which result in unfairness or 'clear prejudice.'" *Brown*, 44 F.3d at 935 (quoting *Ware v. Schweiker*, 651 F.2d 408 (5th Cir. Unit A July 1981)).

Plaintiff's argument that the ALJ should have ordered a consultative mental health examination because the records regarding Plaintiff's mental health issues are "scanty," fails because Plaintiff has failed to demonstrate that the record contains evidentiary gaps resulting in unfairness or clear prejudice. And Plaintiff has failed to show that re-contacting Plaintiff's physicians or ordering a consultative examination was necessary for the ALJ to make an informed decision.

This is so because the ALJ had sufficient evidence in the record regarding Plaintiff's mental health issues to make an informed decision. For example, the ALJ reviewed and considered Plaintiff's initial psychological screening in December 2008. The psychological screening evidenced that Plaintiff reported mania, grandiosity, lack of sleep, excessive talking, promiscuous behavior, spending sprees, mood swings, and risk-taking behaviors. He also reported a history of panic attacks with shortness of breath, a racing heart, and dizziness. Although Plaintiff's mental status exam findings noted a depressed mood, the ALJ pointed out that the mental status exam revealed that Plaintiff's appearance and personal hygiene were adequate, and importantly, his immediate and remote memory were intact, and he demonstrated adequate insight and judgment, each of which supports the conclusion that Plaintiff was not disabled. (R. 45, 396–98.)

The ALJ also had available and considered Plaintiff's records from Meridian Behavioral Healthcare from November 2012 to March 2013. While the Meridian Behavioral records contain a diagnoses of bipolar disorder, alcohol dependence, and rule out PTSD, the progress notes from Meridian disclose that Plaintiff only reported a little anxiety and reported to

the examiners that the medication he was taking stabilized his mood and that he felt "fine." Notably, as the ALJ pointed out, Plaintiff's mental status examinations disclosed normal findings, including good insight and judgment as well as normal motor behavior and speech, despite Plaintiff's complaints of side effects from his medications. (R. 45–46, 430–37, 448–56.)

The ALJ also considered the other medical opinion evidence in the record that discussed Plaintiff's mental health issues, including various mental status examinations in December 2012 and April 2013. These examinations do not include any evidence of depression or anxiety and document that Plaintiff exhibited a normal mood and affect. (R. 46, 491, 498.)

Lastly, the ALJ had the benefit of expert opinion evidence from the state agency psychologists at the hearing level and the reconsideration level.  Dr. Sanchez, the psychologist at the reconsideration level, concluded that Plaintiff was capable of making simple work-related decisions although he might have difficulty getting along with others. In weighing this evidence, the ALJ assigned more weight to the opinion from the psychologist at the reconsideration level in light of the mental status

exam findings and additional testimony obtained at the hearing level that was not available to the state agency psychologist at the hearing level. (R. 47, 137–39.)

In assessing Plaintiff's RFC the ALJ appropriately considered and incorporated the findings by the state agency psychologist as well as Plaintiff's subjective complaints regarding his mental health impairments. To account for limitations related to Plaintiff's mental health issues, the ALJ "assigned the additional social and concentration limitations in light of [Plaintiff's] psychological impairments and added the restriction of avoiding hazards in light of [Plaintiff's] subjective complaints of dizziness." (R. 46.)

In short, the record contained sufficient evidence regarding Plaintiff's mental health impairments to enable the ALJ adequately to assess Plaintiff's mental RFC.  Therefore, because the ALJ was able to assess Plaintiff's functional limitations related to his mental health impairments based upon the psychological assessments and examinations in the record the ALJ was not required to obtain a further consultative examination or obtain other medical evidence. Accordingly, Plaintiff has failed to show the requisite prejudice to establish a need to develop the record further.

## V.  RECOMMENDATION

In view of the foregoing, it is respectfully **RECOMMENDED** that the

decision of the Commissioner should be **AFFIRMED**.

**IN CHAMBERS** on the 9th day of May 2018.

*s/Gary R. Jones*

GARY R. JONES
United States Magistrate Judge

## NOTICE TO THE PARTIES

**Objections to these proposed findings and recommendations must be filed within fourteen (14) days after being served a copy thereof. <u>Any different deadline that may appear on the electronic docket is for the court's internal use only, and does not control.</u> A copy of objections shall be served upon all other parties. If a party fails to object to the magistrate judge's findings or recommendations as to any particular claim or issue contained in a report and recommendation, that party waives the right to challenge on appeal the district court's order based on the unobjected-to factual and legal conclusions. *See* 11th Cir. Rule 3-1; 28 U.S.C. § 636.**